IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| C.D.A., a minor child, and Mr. A., | : | |
| his father; and E.A.Q.A., a minor child, | : | |
| and Mr. Q., his father, | : | Civil Action No. 5:21-cv-00469 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| The United States of America, | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

AND NOW, this            day of                        , 2022, upon consideration of the

United States of America's motion to dismiss, it is hereby ORDERED that the motion is

GRANTED and all claims in the plaintiffs' complaint are dismissed, with prejudice.


BY THE COURT:


_____
HONORABLE EDWARD G. SMITH
Judge, United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| C.D.A., a minor child, and Mr. A., | : | |
| his father; and E.A.Q.A., a minor child, | : | |
| and Mr. Q., his father, | : | Civil Action No. 5:21-cv-00469 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| The United States of America, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

AND NOW, this          day of                              , 2022, upon consideration of the
United States of America's motion to dismiss, it is hereby ORDERED that the motion is
GRANTED in PART and denied in part. The following counts are hereby dismissed, with
prejudice:

The remaining claims that survive dismissal are hereby transferred to the United
States District Court for the Western District of Texas.

BY THE COURT:

_____
HONORABLE EDWARD G. SMITH
Judge, United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

C.D.A., a minor child, and Mr. A.,          :
his father; and E.A.Q.A., a minor child,    :
and Mr. Q., his father,                     :          Civil Action No. 5:21-cv-00469
                                            :
        Plaintiffs,                         :
                                            :
                    v.                      :
                                            :
The United States of America,               :
                                            :
        Defendant.                          :

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

In their complaint, the plaintiffs assert claims pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671 et seq. (the "FTCA") and the Alien Tort Statute, 28 U.S.C. § 1350 (the "ATS"). No claims, as pled, are viable under either the FTCA or the ATS. The deficiency cannot be remedied through amendment. For this reason, the United States moves for dismissal of the entire complaint, with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

In the alternative, if any claims survive dismissal, the United States District Court for the Eastern District of Pennsylvania is the wrong forum for such claims. For this reason, the United States moves, in the alternative, for transfer of any surviving claims to the United States District Court for the Western District of Texas pursuant to Rule 12(b)(3).

The factual and legal grounds for this motion are set forth in the accompanying memorandum of law.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


/s/ Gregory David [SRB]
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ Veronica Finkelstein
VERONICA J. FINKELSTEIN
ANTHONY ST. JOSEPH
Assistant United States Attorneys

*Counsel for the United States of America*


Dated:  January 7, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| C.D.A., a minor child, and Mr. A., | : | |
| his father; and E.A.Q.A., a minor child, | : | |
| and Mr. Q., his father, | : | Civil Action No. 5:21-cv-00469 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| The United States of America, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE UNITED STATES' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

At issue in this case is whether adults who entered the country without

authorization can challenge the federal government's enforcement of federal immigration

laws under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671 et seq. (the "FTCA")

and the Alien Tort Claims Act, 28 U.S.C. § 1350 (the "ATS"). They cannot. Although the

United States has now denounced the prior practice of separating children from their

families at the United States-Mexico border and has committed itself to family

reunification, plaintiffs' claims in the complaint should nevertheless be dismissed, with

prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

Moreover, most allegations in the complaint, and the only ones common to all

plaintiffs, relate to acts at the Southern border where the plaintiffs crossed from Mexico

into Texas, were apprehended, and were subject to federal immigration statutes. If any

claims survive dismissal at this stage of litigation, this Court should transfer those claims

---

[1] *See* Executive Order on the Establishment of Interagency Task Force on the Reunification of
Families, Feb. 2, 2021, available at https://www.whitehouse.gov/briefingroom/presidential-
actions/2021/02/02/executive-order-on-the-establishment-ofinteragency-task-force-on-the-
reunification-of-families/.

to the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391(c)(1) and 28 U.S.C. § 1406(a).

## I.    BACKGROUND

### A. Legal Framework for Aliens Entering the United States Without Authorization

Under the Immigration and Nationality Act (the "INA"), any individual present in the United States without being admitted or paroled is inadmissible and is subject to removal. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Such individuals may also be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C § 1325.

Individuals present in the United States who have not been admitted are considered "applicant[s] for admission" and are "inspected by immigration officers" to assess the validity of their claims. *See* 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). The INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). Specifically, such individuals "shall be detained pending a final determination of credible fear prosecution and, if found not to have such fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and (b)(2)(A). The Department of Homeland Security ("DHS") may, in its "discretion," grant parole and release such individuals only under prescribed circumstances on a "case-by-case basis." 8 U.S.C. § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and (b)(4)(ii).

The detention of these individuals is further authorized by 8 U.S.C. § 1226(a), which provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The federal government possesses statutory

authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." See 8 U.S.C. § 1231(g)(1).

### B. Legal Framework for Immigration Custody and Release of Minors

Federal immigration law authorizes the United States to provide for the custody and care of minor children entering the United States without authorization. *See* 6 U.S.C. § 279 and 8 U.S.C. § 1232. Specifically, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008, 8 U.S.C. § 1232(b)(3) ("TVPRA") "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(2)(B).

In addition to this legal framework, the federal government entered into a consent decree (the Flores Agreement)[2] enforced in the Central District of California that "sets out

---

[2] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF 101).

nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing Flores Agreement ¶ 9). Under the Flores Agreement, "[w]ithin five days of arrest, [DHS] must transfer the minor to a non-secure, licensed facility[.]" *Id.* at 902-03 (quoting Flores Agreement ¶ 12).

However, the Flores Agreement "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id.* at 906; *see also United States v. Dominguez-Portillo*, No. EP-17-MJ-4409-MAT, 2018 U.S. Dist. LEXIS 2660, at *22 (W.D. Tex. Jan. 5, 2018) ("[Flores] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]"). Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 U.S. Dist. LEXIS 2660, at *24; *Bunikyte v. Chertoff*, Nos. A-07-CA-164-SS, A-07-CA-165-SS, A-07-CA-166-SS, 2007 U.S. Dist. LEXIS 26166, at *49-52 (W.D. Tex. Apr. 9, 2007). Although the Flores Agreement prefers the release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

### C.  Prior Executive Branch Directives Regarding Immigration Enforcement

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws. In January, 2017, the former President issued Executive Order No. 13767 ("EO 13767") stating that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" 82 Fed. Reg. 8793, § 2(b) (Jan. 30, 2017). EO 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law[,]" *id*. § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole." *Id*. § 11(d). On April 11, 2017, the former Attorney General issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement, and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325.[3]

On April 6, 2018, the former Attorney General issued a "Memorandum for Federal Prosecutors along the Southwest Border." U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (hereinafter the "Zero Tolerance Memorandum"). The memorandum directed federal prosecutors along the Southwest border to immediately accept for

---

[3] *See* U.S. DOJ, Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

prosecution, to the extent practicable, all section 1325(a) offenses referred for prosecution. *Id*. Consistent with EO 13767, and the April 2018 Zero Tolerance Memorandum, DHS referred for prosecution adult individuals, including those traveling with children, who unlawfully entered the United States on the Southwest border in violation of § 1325 or other statutory provisions authorizing criminal prosecution. Minor children of those adults were transferred to ORR custody as UACs.

### D.  The Berks County Family Residential Center

In 2001, Berks County, Pennsylvania converted a nursing home in Leesport, Pennsylvania into the first family residential center. The facility, known as the Berks County Family Residential Center (the "BCRC"), operates as a congregate-care facility with communal sleeping quarters, bathrooms, dining rooms, and recreational areas. DHS signed an intergovernmental service agreement authorizing Berks County to operate the facility (the "IGSA").[4] On a day-to-day basis, the BCRC is run by Berks County employees and contractors, not by federal government employees.

Pursuant to the IGSA, individuals in the "legal custody" of ICE by law, are "released to the physical custody" of Berks County. The IGSA sets forth the services that Berks County will perform to receive payment from ICE at rates set forth in the (IGSA ¶ I.B.) Those covered services include providing bedspace and "Basic Needs" for detainees. (*Id*. III.) With respect to Basic Needs, the IGSA tasks Berks County with providing "residents/detainees with safekeeping, housing subsistence, medical services that are not provided for elsewhere and other services in accordance with this Agreement." (*Id*. ¶ III.B.)

---

[4] *See* https://www.co.berks.pa.us/Dept/BCRC/Pages/AboutDepartment.aspx, attached as Exhibit I (without attachments).

The IGSA requires Berks County to house residents and perform services "in accordance with the most current edition of the ICE/DRO Residential Standards" and to otherwise abide by various federal standards and regulations. (*Id.* ¶ V.) But the IGSA delegates to Berks County day-to-day performance under the IGSA, including operating the Berks Facility and maintaining physical custody over residents, as it sees fit, so long as it does so consistent with the IGSA and applicable federal standards. The IGSA authorizes federal representatives to inspect and monitor Berks County's performance of the IGSA. (E.g., *id.* ¶ VIII.C.)

Under the IGSA, Berks County has promulgated various policies and procedures for the operation of the BCRC that are designed to comply with ICE/DRO requirements. *See* Family Residential Center: Resident Safety Checks Guidance, updated October 26, 2016, attached hereto as Exhibit "A" and ICE/DRO Residential Standard for Residential Census, dated December 21, 2007, attached hereto as Exhibit "B." Among other policies, Berks County has enacted policies to ensure the safety of its residents. This includes, but is not limited to, policies calling for nighttime hall sweeps and evening bedroom safety checks. During the nighttime hall sweeps, staff do not enter resident rooms or shine lights unless there is a need for investigation. During evening bed checks, staff do not make loud noises or shine lights at residents. Efforts are made not to disrupt sleeping residents unless there is an emergency.

### E. Allegations in the plaintiffs' complaint

The plaintiffs in this case are two fathers and their respective sons who arrived at the southern border and crossed into the United States through Texas. The only apparent connection between the two pairs is that they are represented by the same counsel in this

case.[5]  The two sets of fathers and sons seek damages based on their detention and separation.

Plaintiff Mr. A. and his son, C.D.A., crossed the southern border into Texas on May 23, 2018. See Exhibit C_a, CDA I-213. They were apprehended 8 miles east of the Santa Teresa Port of Entry. Id. Mr. A. was charged with illegal entry under 8 U.S.C. § 1325. Exhibit C, Declaration of Joshua Pichardo ¶ 5. Mr. A. and C.D.A. were initially detained together in El Paso, Texas. Because his father faced criminal charges and was transferred to criminal custody, C.D.A. was accepted into to ORR custody in Chicago, Illinois on May 27, 2018. Exhibit D, ORR Admission.  Mr. A. was prosecuted and convicted of violating 8 U.S.C. § 1325 on June 6, 2018. Exhibit D – Text Entry from criminal docket report. He was sentenced to 15 days of incarceration or time served. Mr. A. was reunited with C.D.A. in Leesport, Pennsylvania on July 12, 2018. Exhibit E – BCRC Intake Log. They were detained, together, at the BCRC until their release into the United States on August 9, 2018. Exhibit F – BCRC Release Log. They were separated for a little over a month and a half. They then spent less than a month together at the BCRC.

The other two plaintiffs, Plaintiff Mr. Q. and his son, E.A.Q.A., were never in the BCRC. They crossed the southern border into Texas on June 7, 2018. See Exhibit C_c, EAQA I-213. They were apprehended a little over a mile west of the Paso Del Norte Port of

---

[5] Rule 20(a) permits the joinder of plaintiffs in a single action if: (1) the plaintiffs have a right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there exists some question of law or fact common to the plaintiffs. Fed. R. Civ. Pro. 20(a). These elements are not met here. The two fathers and sons crossed the border months apart, were never detained in the same places or at the same time, were separately prosecuted for different violations, and were released in different locations. Most notably among the differences between each pair, plaintiffs Mr. Q and E.A.Q.A. were never detained in the BCRC facility, which is the locus of the garden variety tort claims. For this reason, severance of the claims is appropriate. *See, e.g., Cooper v. Fitzgerald*, 266 F.R.D. 86 (E.D.Pa. 2010) (severing and dismissing claims).

Entry. Id. Mr. Q. was charged with violating 8 U.S.C. § 1326 based on the government's belief that he had previously entered the United States and been removed. Exhibit C, Declaration of Joshua Pichardo ¶ 6. They were initially detained together in El Paso, Texas. Because his father faced criminal charges and was transferred to criminal custody, E.A.Q.A. was accepted into ORR custody in Brownsville, Texas on June 11, 2018.Exhibit G, EAQA HHS Placement. Charges against Mr. Q. were dropped, and the two were reunited in El Paso, Texas on July 18, 2018 and released together into the United States. Exhibit H, EAQA EARM Notes. They were separated for a little over one month.

After submitting administrative claims, on February 1, 2021, the plaintiffs filed their complaint initiating this civil action. Much of the complaint contains broad criticism of the prior administration's approach to federal immigration enforcement with general allegations about the harms it caused all unauthorized entrants, not the plaintiffs specifically. (Compl. ¶¶ 2-7, 9 27-82, 101-102, 120-122.)[6]

Among the allegations specific to the plaintiffs is the unsupported assertion that they are "residents of this District." (Compl. ¶17.) This sentence is the lone allegation in the complaint supporting venue. There is no explanation for why the four plaintiffs together filed their complaint when their allegations share no common facts (save for those that are also common to thousands of other individuals who entered without authorization and were subject to federal immigration statutes).

Although the plaintiffs certainly characterize the events differently than the government, the parties agree that the plaintiffs were detained and that the fathers were

---

[6] Much of these sections of the complaint consists of pure argument or legal conclusions.

separated from their sons before being reunited.[7] The legal issue, which can be resolved on motion, is whether the facts as alleged by the plaintiffs allow them to sue in tort under the FTCA and the ATS.

The plaintiffs allege seven tort claims in the complaint: intentional infliction of emotional distress (Count I); negligent infliction of emotional distress (Count II); negligence (Count III); loss of consortium (Count IV); torture (Count V); crimes against humanity (specifically persecution) (Count VI); and crimes against humanity (specifically inhumane acts) (Count VII). Although the complaint does not precisely delineate which claims are asserted under which law, it appears that the first four "common law" claims are FTCA claims and the remaining three "international law" claims are ATS claims.[8]

## II.      STANDARD OF REVIEW

The United States moves for dismissal of the complaint or, in the alternative for a transfer of venue. Different standards apply to each request.

### A.   Dismissal under Rule 12(b)

This Court lacks jurisdiction to hear each of the plaintiffs' claims. The claims can be placed into two categories: challenges to various aspects of the government's enforcement of its immigration laws when the plaintiffs crossed the southern border; and challenges to the conditions of confinement, primarily at the BCRC. As to the plaintiffs' FTCA claims, there is no waiver of sovereign immunity for the challenged conduct so these claims should be

---

[7] The complaint is replete with immaterial allegations that would be subject to a Rule 12(f) motion to strike if the claims were not subject to dismissal for the reasons outlined herein.

[8] The plaintiffs demand a jury trial on all claims where a jury is proper. There is no jury entitlement for the FTCA claims. 28 U.S.C. § 2402; *see also Fulton v. United States*, 198 Fed. Appx. 210, 214 (3d Cir. 2006). If any FTCA claims survive, any jury demand as to those claims should be stricken.

dismissed under Rule 12(b)(1). As to both the FTCA and ATS claims, the plaintiffs cannot state a claim under either statute, so all claims are separately subject to dismissal under Rule 12(b)(6). Although liberal amendment is generally permitted, it is not required where, as here, amendment would be futile due to a lack of subject matter jurisdiction or inability to state a claim. *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

### 1.  Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a complaint must be dismissed where the court lacks jurisdiction over the claims in that complaint. Fed. R. Civ. Pro. 12(b)(1); *See Bracken v. Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002). The burden is on the plaintiff, not the defendant, to prove jurisdiction. *Livera v. First Nat'l State Bank of N.J.*, 879 F.2d 1186, 1195 (3d Cir. 1989).

Because a Rule 12(b)(1) motion addresses the trial court's jurisdiction, the trial court may weigh the evidence and satisfy itself as to the existence of its power to hear the case. *See Morris v. Gonzales, No. 06-cv-4383*, 2007 U.S. Dist. LEXIS 69520, *6-7 (E.D. Pa. Sept. 19, 2007). As a result, the trial court "is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction." *Id.* (citing *Cestonaro v. United States*, 211 F.3d 749, 752 (3d Cir. 2000)).

### 2.  Dismissal for failure to state a claim under Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a complaint must be dismissed where it fails to state a plausible claim. Fed. R. Civ. Pro. 12(b)(6). This means any claim must be supported by both the law and the facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Conclusions and legal argument are insufficient. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

The burden is on the defendant, not the plaintiff. *See CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008) as amended (Sept. 29, 2008). In deciding the motion, the Court must accept as true all well-pled factual allegations of the non-moving party, and must view all inferences in the light most favorable to that party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).

### B. Transfer under Rule 12(b)(3)

If a case is filed in an improper venue, a party may seek dismissal and/or transfer to a proper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406. When deciding a Rule 12(b)(3) motion to dismiss for improper venue, a court must accept as true the allegations in the complaint, although both parties may submit affidavits in support of their positions. *Leone v. Cataldo*, 574 F.Supp.2d 471, 483 (E.D. Pa. 2008). The moving party bears the burden of showing that venue is improper. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Section 1406 governs motions to transfer venue for cases or claims originally filed in an improper venue.[9] 28 U.S.C. § 1406(a). It provides that the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id*. The district court has "broad discretion" whether to grant or deny a motion to transfer. *Verilla v. Conrail*, No. 92-0437, 1992 U.S. Dist. LEXIS 8412, at * 2 (E.D. Pa. June 17, 1992) (citing *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973)).

### III. ARGUMENT

---

[9] As argued herein, the government contends venue was never proper in this district. If the Court disagrees, then it should consider the request for transfer under 28 U.S.C. § 1404 which applies to transfer where original venue was proper but where transfer would nonetheless be appropriate. Under either section of the code, the government's argument applies.

The plaintiffs' claims in the complaint are subject to dismissal under Rule 12(b). Because amendment cannot cure the deficiencies, the United States seeks dismissal of the complaint, in its entirety, with prejudice.

In the alternative, if the Court permits any claim to proceed, the United States District Court for the Eastern District of Pennsylvania is the wrong venue for those claims. Any claims that survive dismissal should be transferred to the United States District Court for the Western District of Texas, where venue is proper.

### A.  The plaintiffs' claims are barred under the FTCA and ATS.

The plaintiffs allege seven tort claims in the complaint. The first four are state tort claims under the FTCA: intentional infliction of emotional distress (Count I); negligent infliction of emotional distress (Count II); negligence (Count III); and loss of consortium (Count IV). The plaintiffs have not alleged viable FTCA claims and these claims should be dismissed.

The remaining three claims are "international law" claims presumably asserted under the ATS: torture (Count V); crimes against humanity (specifically persecution) (Count VI); and crimes against humanity (specifically inhuman acts) (Count VII).[10] The plaintiffs have not alleged viable ATS claims and these claims should also be dismissed.

### 1.  The plaintiffs state no viable FTCA claim.

Congress enacted the Federal Tort Claim Act, 28 U.S.C. § 1346, as a waiver of sovereign immunity, to provide remedies to certain individuals harmed by government negligence. There are numerous exceptions to the FTCA's limited waiver of sovereign

---

[10] Plaintiffs' styling of these claims does not control whether they have stated a viable cause of action under the ATS. The mere fact that the plaintiffs allege, for example, that periodic bed checks and brief periods of separation while a parent is being criminally prosecuted constitute "torture" does not, by itself, establish that these allegations meet the legal definition of torture.

immunity. *See* 28 U.S.C. § 2680; *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983). Any waiver is strictly construed in favor of the United States. *U.S. v. Bein*, 214 F.3d 408, 412 (3rd Cir. 2000). Where there is no waiver, the Court lacks subject matter jurisdiction to entertain a claim. *United States v. Sherwood*, 312 U.S. 584, 590-91 (1941). Amendment cannot cure a lack of subject matter jurisdiction.

The plaintiffs' FTCA claims are for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and loss of consortium. The alleged factual basis for these claims is the above described detention and separation as a result of the decision to initiate criminal proceedings against the fathers. For the FTCA's waiver of sovereign immunity to apply, the plaintiffs must point to conduct that is recognized as a tort under applicable state law and plead that the United States engaged in conduct for which a private party would be held liable under state law.  28 U.S.C. § 1346(b), 2674. Here, there is no waiver of sovereign immunity for the tort claims brought under the FTCA for five independent reasons. This deprives the court of jurisdiction to hear the claims. Moreover, even if there were jurisdiction, the plaintiffs fail to state a claim because the conduct they point to cannot sustain any of their claims. Any amendment would be futile.

### a. All FTCA claims are barred by the discretionary function exception.

The plaintiffs' FTCA claims are barred by the discretionary function exception. The purpose of the discretionary function exception is to "protect certain important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992). The "discretionary function" exception, bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). As the

14

legislative history of the FTCA explains, the statute was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

The discretionary function exception bars claims based on acts that "involve an element of judgment or choice" and are "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (citation and internal quotation marks omitted); *see also Bedell v. United States*, 669 F. Appx. 620 (3d Cir. 2016). "The basis for the discretionary function exception was Congress' desire to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded on social, economic, and political policy through the medium of an action in tort." *Berkovitz v. United States,* 486 U.S. 531, 536-37 (1988). The complaint asks this Court to do the exact type of second guessing of policy-based discretionary decision-making that the discretionary function exception prohibits. The plaintiffs ask the Court to find that the prior administration's discretionary decision to enforce federal immigration statutes, which led to the plaintiff fathers' prosecutions and the resulting separations from their sons, is tortious under the FTCA. The discretionary function exception divests the Court of jurisdiction to do so.

Under this exception, courts will look at whether the conduct at issue is "susceptible to policy analysis." *S.R.P. v. United States*, 676 F.3d 329, 333 (3d Cir. 2012). "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion *conferred by statute or regulation*." *Gaubert*, 499 U.S. at 325 (emphasis added). Rather, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id*. at 324; *see also*

*S.R.P,* 676 F.3d at 336; *Cestonaro v. United States*, 211 F.3d 749, 755 n.4 (3d Cir. 2000). In sum, if the challenged actions "involve an element of judgment or choice" and are "susceptible to" policy analysis, the discretionary function exception applies and the complaint must be dismissed for lack of subject matter jurisdiction, regardless of whether the government acted negligently or abused its discretion. *See Gaubert*, 499 U.S. at 323; *Brown v. United States*, 823 F. App'x 97, 101-02 (3d Cir. 2020) (affirming dismissal of action pursuant to Rule 12(b)(1)).

Plaintiffs' claims are barred because they involve precisely the sort of discretionary decision-making that is shielded by the FTCA. As the Supreme Court has recognized, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Indeed, "[t]he Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("decisions concerning enforcement" are matter of "discretion").

Concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). This is because the "country's border control policies are of crucial importance to the national security and foreign policy of the United States." *United States v. Delgado-Garcia*, 374 F.3d 1337, 1345 (D.C. Cir. 2004).

Further, law enforcement authorities have discretionary decision-making authority regarding detention and conditions of confinement. *See Millbrook v. United States*, 569 U.S. 50 (2013). Thus, for example, "Congress has placed the responsibility of determining where

aliens are detained within the discretion of the Attorney General." *Cmtte. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added). Indeed, decisions relating to aliens, including placement and detention, are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Id.* (quoting *Hampton v. Mow Sung Wong*, 426 U.S. 88 (1975)).

Where children are involved, there are many additional policy considerations. As is evidenced by the regulatory framework outlined above, government officials are required to contemplate not only a number of law enforcement considerations, but also child welfare considerations, such as what is in the "best interests of the child." *See* 8 U.S.C. § 1232(c)(2)(A). Such decisions relating to health and welfare are the very sort of discretionary decisions that the discretionary function exception was designed to protect.

The plaintiffs were detained pursuant to the prior administration's "zero tolerance" approach to criminal immigration enforcement. That decision was not merely "susceptible to" policy considerations. Rather the government spelled out the policies it sought to further through its enforcement efforts in a series of memoranda. As other courts have recognized, the "zero tolerance" policy at issue here—which was subsequently revoked—"amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No. 18-1445 (PLF), 2019 U.S. Dist. LEXIS 164946, at *15 (D.D.C. Sep. 26, 2019); *see also Arita v. United States*, 470 F. Supp. 3d 663, 683 (S.D. Tex. 2020). As a result of the government's discretionary decision to detain the plaintiff fathers for criminal prosecution, their minor sons were placed in the care and custody of ORR, which was vested with authority to make a range of discretionary decisions to ensure their health and welfare. In particular, "[i]t is clear that the ultimate choice of facility for

housing unaccompanied alien children is a decision vested with policy considerations." *Walding v. United States*, 955 F. Supp. 2d 759, 772 (W.D. Tex. 2013). Accordingly, the separations that forms the basis of the complaint were the consequence of discretionary decision-making, and all claims under the FTCA are therefore barred.

As to the detention of the plaintiffs' sons, as outlined above, in the exercise of its discretion, ORR makes decisions regarding the health and safety of children in the government's care and custody. *See* 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). Such discretionary decisions are the precise sort of decisions that are protected by the FTCA's discretionary function exception. *See id*.

The facts here involve a series of interrelated discretionary decisions authorized by federal immigration statutes. When the plaintiffs crossed the southern border, governmental discretion was exercised to decide whether to detain them, whether to refer the fathers for prosecution, and whether to prosecute the fathers. Once the fathers were held (rather than released), discretion was exercised to decide the placements in detention. Further governmental discretion was exercised in the decision to criminally prosecute Mr. A. and Mr. Q. Once those decisions were made, it was no longer possible for the sons to be housed with their fathers. Once the criminal processes ended, governmental discretion was exercised as to where, when, and how to reunite the fathers and sons. The discretionary actions here do not form the basis of an FTCA claim. The conduct challenged in the complaint all flowed from the government's discretionary enforcement of federal immigration statutes. Plaintiffs' characterization of these events as tortious does not authorize this court to second-guess the policy-based discretion of the executive branch.

Likewise, although the plaintiffs allege that in implementing the alleged "family separation policy," the government violated various alleged "mandatory" obligations regarding conditions of confinement, such claims are barred for the reasons stated above

18

because they are "inextricably intertwined" with the separation. *See Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001) (claims "inextricably tied" or "inextricably linked" to conduct protected by section 2680(a) also barred). Moreover, courts have repeatedly held that such challenges to conditions of confinement are barred by the discretionary function exception because they involve discretionary decisions.[11]

Indeed, a number of courts have held that conditions of confinement claims are constitutional claims that cannot be brought under the FTCA. *See Sutter v. United States,* No. CV 17-07245-SVW (DFM), 2019 U.S. Dist. LEXIS 71548, at *11 (C.D. Cal. Mar. 12, 2019) ("[E]ven though Plaintiff attempts to cloak his claims in terms of negligence, his [conditions of confinement] claims are constitutional tort claims and as such are not cognizable under the FTCA.") (citations omitted); *Aguilar v. United States*, Civil Action No.

---

[11] To the extent the plaintiffs challenge decisions made by BCRC staff, not employees of the federal government, then the independent contractor exception applies to the challenged conduct. 28 U.S.C. § 2671. The government's decision to contract with the BCRC in the first instance was still, however, a policy-based decision subject to the discretionary function exception. Plaintiffs specifically criticize the night checks at the BCRC. The complaint also references conditions such as poor communication and overcrowding. In the FTCA context, courts have held that such claims are subject to discretionary decision-making involving numerous policy considerations and thus are barred. *See, e.g., Bultema v. United* States, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainee medical care decisions involve "several policy considerations . . . including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (discretionary function exception shielded decision to transfer prisoner to facility with allegedly inadequate medical treatment); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by discretionary function exception); *Lineberry v. United States*, No. 3:08-CV-0597-G (BH), 2009 U.S. Dist. LEXIS 134350, at *14-15 (N.D. Tex. Feb. 25, 2009*)* ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

1:16-cv-048, 2017 U.S. Dist. LEXIS 206278, at *9-10 (S.D. Tex. June 7, 2017) (finding that emotional distress claim arising from the conditions of confinement allegations regarding food, crowding, and sanitation at CBP detention facility were more properly characterized as a "'[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement. . . [and] the United States is not vicariously liable for constitutional torts of its officials since the United States has not waived sovereign immunity from such actions.'").

In *Arita*, for example, the court dismissed FTCA claims similarly arising from the prior administration's "family separation policies." 470 F. Supp. 3d at 686-87. Like the plaintiffs in *Arita*, plaintiffs here allege that the "family separation" practices were unlawful and they challenge various associated conditions of confinement. In dismissing the claims, the *Arita* court agreed with the government that the "family separation policy itself and its implementation by officers in the field are discretionary." *Id*. at 687 ("prosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy— such as the United States Attorney General's priorities and United States Attorneys' discretion—that is intended to be shielded by the discretionary function exception."). Accordingly, the court concluded that the challenged decision-making was "'grounded in social, economic, and policy'" considerations that the court was "without jurisdiction to second-guess." *Id*. (quoting *Gaubert*, 499 U.S. at 323). Finally, the *Arita* court held that, "to the extent Plaintiffs attempt to bring a constitutional tort claim against the United States under the Federal Tort Claims Act, or assert that the Constitution itself furnishes a nondiscretionary standard of medical care that is actionable under the FTCA in the event such care is not provided, such claim is entirely jurisdictionally barred." *Id*. at. 688.

The Court should decline to engage in the sort of "second-guessing" that the discretionary function exception was designed to prevent. *See Berkovitz*, 486 U.S. at 536;

*See Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008) ("The [discretionary function] exception's purpose is 'to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'") (citing *United States v. S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)).

The plaintiffs' FTCA claims are barred by the discretionary function exception.

### b. All FTCA claims are barred by the FTCA's due care exception.

The plaintiffs' claims also are barred by the FTCA's due care exception. This exception bars "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957). *See also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement of 'rules and regulations'" barred by due care exception).

Among other things, this exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953). *See also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"). Accordingly, where a government employee's actions are authorized by statute or regulation, the due care exception applies, and the claim must be dismissed for lack of subject matter jurisdiction. *See, e.g., Pooler v. United States*, 609 F. Supp. 198, 202 (E.D. Pa. 1985), aff'd, 787 F.2d 868 (3d Cir. 1986) (dismissing claim).

The due care exception bars all the plaintiffs' FTCA claims here because the United States had the statutory authority to determine whether and where to detain the plaintiffs after they entered the country unlawfully, *see* 8 U.S.C. §§ 1225, 1226(a), 1231(g)(1), as well as the authority (and, indeed duty) to place any minor children in the custody and care of ORR while the accompanying parent was detained, *see* 8 U.S.C. §§ 1232(b)(3), 1232(c)(2)(A), 8 U.S.C. § 279(g). In addition, the plaintiffs' unlawful entry occurred at a time when Executive Orders and other executive branch directives cited above instructed federal agencies to strictly enforce federal immigration statutes. This included, but was not limited to, prosecuting illegal entry when practicable and detaining adult individuals for pending removal proceedings. Enforcement of immigration laws in a way authorized by statute cannot form the basis of an FTCA claim.

The plaintiffs' FTCA claims are barred by the due care exception.

### c. The plaintiffs' FTCA claims are further barred because they have no private analog.

The plaintiffs' FTCA claims are further barred because their claims have no private analog, a requirement for FTCA liability. The FTCA waives sovereign immunity for tort claims caused by the negligent or wrongful act or omission of any federal employee while acting within the scope of his office or employment, under circumstances in which the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1); *Lomando v. United States*, 667 F.3d 363, 372 (3d Cir. 2011). In other words, for a claim to be cognizable against the United States under the FTCA, the Court must find a state law under which a private actor would be liable for the actions alleged. *See United States v. Olson*, 546 U.S. 43, 44, 126 S. Ct. 510, 163 L. Ed. 2d 306 (2005); *see also CNA*, 535 F.3d at 132.

There is no private analog, and therefore no FTCA waiver of sovereign immunity, for the execution of federal immigration law as it is conduct that only the federal government is authorized to perform. *Feres v. United States*, 340 U.S. 135, 146, (1950); *see also Maliek-Ali v. United States Dep't of State*, Civil Action No. 18-102 Erie, 2019 U.S. Dist. LEXIS 55105, at *3 (W.D. Pa. Apr. 1, 2019); *Muhammad v. United States*, 884 F. Supp. 2d 306 (E.D. Pa. 2012); *see, c.f. Avalos-Palma v. United States*, Civil Action No. 13-5481(FLW), 2014 U.S. Dist. LEXIS 96499 (D.N.J. July 16, 2014) (finding an FTCA claim could lie where the government deported a plaintiff contrary to immigration law).[12]

Here, the plaintiffs challenge the fact that they were subject to the execution of federal immigration law, pursuant to which they were detained, separated, housed for a period of time, reunited, and released into the United States. There is no private analog for these actions. The execution of federal immigration law is a quintessentially federal function. It is governed by the INA and the TVPRA, federal laws. Private actors cannot *determine* whether to admit, detain, prosecute, house, reunify, or release individuals pursuant to the INA or the TVPRA. Every fact alleged in the complaint relates to something only the government, and only the federal government specifically, can do— enforce federal immigration statutes.

The plaintiffs' FTCA claims are barred because their claims have no private analog.

---

[12] The instant complaint is one of many filed across the country in different jurisdictions urging courts to find that FTCA claims can lie on these facts. The issue of whether there is a state law analog is a question of Pennsylvania law—the outcomes in other cases do not answer the fundamental question of whether Pennsylvania law would recognized a tort if a private actor engaged in the conduct described herein.

### d.  All FTCA claims fail because they assert constitutional torts.

The plaintiffs' FTCA claims are barred because they assert constitutional torts that are not cognizable under the FTCA. As noted above, FTCA claims must be grounded in state law. *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007). *F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994). The plaintiffs cannot recast an alleged deprivation of due process as an FTCA claim. *See e.g., Ibrahim v. United States Dep't of Veteran Affairs*, 779 F. App'x 1010, 1010-11 (3d Cir. 2019) (affirming the dismissal of a due process claim asserted under the FTCA because the FTCA provided no waiver of sovereign immunity for such a claim). Allegations that separations violated due process are grounded in the Constitution, not in Pennsylvania law.

Nor do the plaintiffs' allegations about the conditions of confinement at the BCRC give rise to an FTCA claim. The plaintiffs allege that individual actors violated the Constitution through their actions. Allegations that individual government actors are liable for violation of the Constitution can only form the basis of a claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Such allegations cannot form the basis of an FTCA claim. *See Couden v. Duffy*, 446 F.3d 483, 498-99 (3d Cir. 2006). Here, not only are such claims barred as constitutional torts but, as previously argued in footnote 12, they are also barred by the independent contractor exception to the FTCA.

The plaintiffs' claims are barred because they assert constitutional torts that are not cognizable under the FTCA.

### e.  All FTCA claims relating to detention at the BCRC are barred by the independent contractor exception.

Under the FTCA, the United States is liable for the acts of government employees acting within the scope of their employment. 28 U.S.C. § 1346(b). It is not liable for the acts

of an independent contractor. 28 U.S.C. § 2671. The Supreme Court has held that the independent contractor exception turns on whether the United States "controls the physical conduct of the contractor in performance of the contract." *Logue v. United States*, 412 U.S. 521, 527 (1973). In other words, "the question here is . . . whether [the contractor's] day-to-day operations are supervised by the Federal Government." *United States v. Orleans*, 425 U.S. 807, 815 (1976).

Here, the plaintiffs were detained in facilities run by contractors, not by the federal government. The day-to-day operation of the BCRC was done by Berks County acting as a contractor. The plaintiffs have not alleged, nor is it true, that the United States directed the Berks County independent contractors as they housed the plaintiffs in detention. All allegations about the temperature, food, crowding, and night checks during detention criticize the actions of contractors. The plaintiffs have pled no federal government actor directing these actions, and indeed there is none.

All FTCA claims relating to detention at the BCRC are barred by the independent contractor exception.

Taken in total, the plaintiffs' FTCA claims fail for five independent reasons. Any one of these grounds would be sufficient for dismissal. Amendment cannot cure any of these deficiencies. This Court should dismiss, with prejudice, Counts I through IV of the complaint.

### 2.   The plaintiffs state no viable ATS claim.

The Court should also dismiss Counts V, VI, and VII, which rely on the ATS. As the Supreme Court noted in *Sosa v. Alvarez-Machain*, the ATS is "jurisdictional," it creates "no new causes of action" for private plaintiffs like the plaintiffs here. *See* 542 U.S. 692, 724 (2004); *see also Jesner v. Arab Bank, PLC*, 138 S.Ct. 1386, 1397 (2018) ("The ATS is 'strictly

jurisdictional' and does not by its own terms provide or delineate the definition of a cause of action for violations of international law"). Rather, where there has been a violation of the law of nations or a treaty of the United States, the ATS allows such a violation to be litigated in federal court. *See* 28 U.S.C. § 1350; *see, e.g., Karunamunige Chamila Krishanthi v. Rajakumara Rajaratnam*, No. 09-CV-05395 (DMC-JAD), 2010 U.S. Dist. LEXIS 88788, at *57 (D.N.J. Aug. 26, 2010) ("Federal courts should not recognize private claims under federal common law for violations of any international law norm with less definite content and acceptance among civilized nations than the historical paradigms familiar when § 1350 was enacted").

Thus, for the ATS to apply, the plaintiffs here would have to prove a violation of the law of nations or a treaty of the United States that gives rise to a tort. *See Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 350-51 (D.N.J. 2003). The Supreme Court has cautioned courts from liberally finding such a violation, noting that courts should only recognize private claims under federal common law for violations of any international law where such violations were well accepted among civilized nations when section 1350 was enacted. *Sosa*, 542 U.S. at 724-25; *see also Hereros v. Deutsche Afrika-Linien Gmblt & Co.*, 232 F. App'x 90, 93 (3d Cir. 2007) (noting that there was a "very limited category" of violations recognized when the ATS was enacted). In other words, there must be a violation of a norm that is specific, universal, and obligatory. *Sosa*, 542 U.S. at 732-33; *Ben-Haim v. Neeman*, 543 F. App'x 152, 154 (3d Cir. 2013). Courts in this circuit finding an ATS claim do so where there is evidence that alien detainees were tortured, beaten, harassed, and housed in sub-human conditions. *See, e.g., Jama v. United States INS*, 343 F. Supp. 2d 338, 386 (D.N.J. 2004) (denying motion to dismiss).

26

The plaintiffs' allegations do not allege such a violation. The execution of federal immigration law when plaintiffs crossed the southern border and which thereafter dictated their handling under federal statutes, does not equate to torture or crimes against humanity. American courts have recognized that the right to be free from cruel, unhuman or degrading treatment is a universally accepted customary human rights norm. *Abebe-Jira v. Negewo*, 72 F.3d 844, 847 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 961 (1996) (two minor plaintiffs were stripped naked, bound, whipped severely, and threatened with death); *Paul v. Avril*, 901 F. Supp. 330, 331-35 (S.D. Fla 1994) (the plaintiffs were kidnapped, beaten with blunt objects and had their genitalia squeezed until they fainted from pain); *Xuncax v. Gramajo*, 886 F. Supp. 162, 184-85 (D. Mass. 1995) (the plaintiffs were beaten, mutilated, and forced to watch their family members being killed). The commonality between these cases is that they involved extreme forms of abuse. Here, the facts are quite different and even as alleged do not amount to extreme forms of abuse like those described in cases where ATS violations have been found. *See Filártiga v. Peña-Irala*, 630 F.2d 876, 882-85 (2d Cir. 1980). Although the plaintiffs' allegations are serious, the conduct of which they complain did not violate *jus cogens* norms—the highest international law norm supported by widespread state practice of nations acting of out a sense of legal obligation. RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES, §102(2).

Even taken in the light most favorable to the plaintiffs, the allegations in the complaint do not rise to the level of a violation of international law. The plaintiffs entered the country without authorization. The fathers were initially detained together with their sons before they were separated while the fathers were criminally prosecuted. After the prosecutions were complete, Mr. A. and Mr. Q. were reunited with their sons, in six and five

weeks, respectively. Mr. A. and C.D.A. were briefly housed at the BCRC where they were subject to routine security checks. These alleged facts, while undesirable and uncomfortable, do not amount to a violation of treaty obligations or specific, universal, and obligatory international norms.

The plaintiffs state no viable ATS claim. The facts as alleged do not provide jurisdiction to this Court under the ATS and the facts do not amount to an ATS claim. Amendment cannot cure any of these deficiencies. This Court should dismiss, with prejudice, Counts IV through VII of the complaint.

> **B.  In the alternative, if any claims survive this threshold motion, they should be transferred to the United States District Court for the Western District of Texas.**

If any claims survive this threshold motion to dismiss, they should not be litigated in this district. Rather, those claims should be transferred to the United States District Court for the Western District of Texas. Pursuant to 28 U.S.C. § 1402(b), an FTCA action "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." Although the plaintiffs allege that they are domiciled in the Eastern District of Pennsylvania, they do not "reside" in the district as that term of art is defined for venue purposes. Residency, for all purposes of establishing venue, is defined by 28 U.S.C. § 1391(c)(1), which provides: that: "For all venue purposes- (1) a natural person, *including an alien lawfully admitted for permanent residence* in the United States, shall be deemed to reside in the judicial district in which that person is domiciled. (emphasis added). The Supreme Court has long recognized that, for venue purposes, an alien is "assumed not to reside in the United States." *See Galveston, H. & S.A. Ry. Co. v. Gonzales*, 151 U.S. 496, 506-07 (1894).

In *Najera v. United States*, the court found that a citizen of Honduras was an alien for purposes of venue and thus his claims were improperly filed in the Eastern District of

Virginia. No. 1:16cv459 (JCC/JFA), 2016 U.S. Dist. LEXIS 162110, at *16-22(E.D. Va. Nov. 22, 2016); *see also J.P. v. Sessions*, No. LA CV1806081 JAK (SKx), 2019 WL 6723686, at *43 (C.D. Cal. Nov. 5, 2019) ("Courts have determined that non-citizens, including those who [are] not lawful permanent residents, do not reside in any district of the United States for purposes of venue.").

The ATS contains no venue provision. ATS claims are litigated in the place where the underlying actions occurred and where the plaintiff's alleged harms were incurred. *Mensah-Yawson v. Raden*, 170 F. Supp. 3d 222, 234 (D.D.C. 2016); *Abecassis v. Wyatt*, 669 F. Supp. 2d 130, 133 (D.D.C. 2009).

The plaintiffs have never alleged that they are now, nor have they ever been, lawfully admitted for permanent residence, such that they reside in the Eastern District of Pennsylvania. Even viewed broadly, the only common allegation between the plaintiffs is that they entered the county without authorization and were detained in the Western District of Texas. The location of the relevant events, records and any witnesses is in the Western District of Texas—to the extent any cognizable tort exists. The only records or witnesses connected to the Eastern District of Pennsylvania pertain to the common law tort claims involving two of the four plaintiffs' brief stay at the BCRC. Therefore, if any claims survive dismissal, they must pursue those claims where the events occurred, in the Western District of Texas. U.S.C. § 1402(b), 1406(a). Moreover, only the common law tort claims relate to conditions of confinement at BCRC. The international law claims relate to enforcement of immigration statutes relating to the plaintiffs at the border—in the Western District of Texas. The international law claims have no nexus to Pennsylvania—only to Texas. In the event that any claims survive dismissal, the United States hereby moves to transfer this case to the Western District of Texas.

29

IV.     CONCLUSION

For the aforementioned reasons, this Court should enter an order dismissing all claims in the plaintiffs' complaint, with prejudice. In the alternative, if claims survive dismissal, they should be transferred to the United States District Court for the Western District of Texas.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


/s/ Gregory David [SRB]
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ Veronica Finkelstein
VERONICA J. FINKELSTEIN
ANTHONY ST. JOSEPH
Assistant United States Attorneys

*Counsel for the United States of America*

Dated:  January 7, 2022

30

## CERTIFICATE OF SERVICE

I certify that on this date, I filed the foregoing motion with the Court and served it via ECF case filing and email, on the following:

Karen L. Hoffman
SyrenaLaw
128 Chestnut Street, Suite 301A
Philadelphia, PA 19106
karen@syrenalaw.com

Bridget Cambria
Amy Maldonado
Aldea-The People's Justice Center
532 Walnut Street
Reading, PA 19601
bridget@aldeapjc.org
amy@amaldonadolaw.com

Dated: January 7, 2022

*/s/ Veronica J. Finkelstein*
Veronica J. Finkelstein
Assistant United States Attorney