IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

C.D.A., a minor child, and Mr. A.,   :
his father; and E.A.Q.A., a minor   :
child, and Mr. Q., his father,   :   Civil Action No. 5:21-cv-00469
   :
     Plaintiffs,   :
   :
        v.   :
   :
The United States of America,   :
   :
     Defendant.   :

**REPLY IN SUPPORT OF
THE UNITED STATES' MOTION TO DISMISS
THE PLAINTIFFS' AMENDED COMPLAINT**

This Court should grant the United States' motion to dismiss, for lack of subject matter jurisdiction and for failure to state a claim. Additionally, the claims in this action are not properly joined. Finally, any surviving claims should be transferred to another venue. Any surviving claims alleged by the plaintiffs separated in Texas should be transferred to the United States District Court for the Western District of Texas. Any surviving claims alleged by the plaintiffs separated in New Mexico should be transferred to the United States District Court for the District of New Mexico.

1

1. **The claims in this civil action are not viable as pled and should be dismissed.**

As set forth in greater detail in the United States' motion, the plaintiffs here assert claims under the FTCA and the ATS.[1] Both types of claims are subject to dismissal for multiple independent reasons.

a. **The plaintiffs' FTCA claims are not viable.**

i. **The discretionary function exception bars the plaintiffs' FTCA claims.**

As explained in the United States' motion, the discretionary function exception to the FTCA bars the plaintiffs' claims because: the underlying acts alleged to be tortious related to the enforcement of immigration law and policy, which involved elements of choice and discretion and is susceptible to policy analysis. As such, the two-part test for the discretionary function exception set forth in *Berkovitz v. United States*, 486 U.S. 531 (1988) and *United States v. Gaubert*, 499 U.S. 315 (1991) is met.

This case is not a constitutional challenge to the now-revoked Zero Tolerance Policy. It is a tort case. This Court should, therefore, resist plaintiffs' urging to rule on the propriety of the policy writ large. Many of plaintiffs' allegations in the amended complaint and their Response are about the policy generally—not the specific <u>torts</u> plaintiffs allege.

Focusing on the specific allegations, plaintiffs characterize three sets of conduct as tortious: (1) detention conditions (Am. Compl. ¶¶ 87, 95, 133-127, 138);

---

[1] The same abbreviations are used in this reply as were used in the United States' motion.

(2) the separation of Mr. A. and Mr. Q. from their children (Am. Compl. ¶¶ 89, 91-92, 97, 108, 139, 142-144); and (3) statements made during reunification (Am. Compl. ¶ 107, 149).

The federal government has "broad, undoubted power over the subject of immigration and the status of aliens," *Arizona v. United States*, 567 U.S. 387, 394 (2012). The conduct alleged to be tortious here involved quintessentially discretionary decisions, such as (1) where and with whom detainees are housed; (2) how safety checks should be conducted: and (3) what detainees should be told after they complete their criminal process. The first part of the *Berkovitz-Gaubert* inquiry is met because each of the allegedly tortious acts involves a discretionary decision not specifically dictated by a statute, regulation or agency policy. "Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." *Dalehite v. United States*, 346 U.S. 15, 36 (1953).

The second part of the inquiry is also met. Here, the Court begins with a presumption that the challenged action is susceptible to policy analysis. *Gaubert*, 499 U.S. at 324. The plaintiffs cannot overcome this presumption. The enforcement of immigration law involves the balancing of important policy considerations. *See Galvan v. Press*, 347 U.S. 522, 530 (1954).

Courts have repeatedly held that claims based on acts or omissions relating to "conditions of confinement" are barred by the discretionary function exception,

because the manner in which the government manages and operates its detention facilities involves discretionary decisions susceptible to policy considerations. *See, e.g., Bultema v. United States*, 359 F.3d 379, 384 (5th Cir. 2004) (applying discretionary function exception to negligence claim based on lack of safety equipment on bunk bed); *Rodriguez v. United States*, 415 F. App'x 143, 146-47 (11th Cir. 2011) (*per curiam*) (applying discretionary function exception to negligence claim regarding exercising equipment provided to detainees).

Courts have similarly held that decisions about what information to provide to detainees, and when to allow them telephone use, are barred by the discretionary function exception. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (holding that detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests") (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.")

In an effort to avoid dismissal, the plaintiffs argue that the discretionary function exception is inapplicable because the government actors here violated the Constitution. This argument is unavailing for three primary reasons.

First, the right identified by the plaintiffs— a Fifth Amendment Due Process right to family integrity—applies only to their challenges to separation. It does not apply to their claims relating to conditions of confinement or the process of

reunification. So even fully crediting the plaintiffs' argument, much of the alleged conduct would be unrelated to this identified constitutional right. The discretionary function exception would still apply to claims arising from conditions of confinement or the process of reunification.

Second, even unconstitutional acts may be subject to the discretionary function exception. The exception is only inapplicable when a government actor ignores a clearly established constitutional right. *See, e.g., Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) (allegation of unconstitutional conduct did not defeat application of the DFE because plaintiffs' claimed constitutional right to be free from the search at issue was not "clearly established."); *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right must be sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). That is not the case here.

Under the factual circumstances of this case, no broad, unfettered right to family integrity in the immigration context had been clearly established at the time Mr. A. and Mr. Q. were separated from their children. As evidence that the right existed, the plaintiffs cite *W.S.R. v. Sessions*, which involved the continued separation of Mr. A. and C.D.A. after Mr. A. served his criminal sentence. 318 F. Supp. 3d 1116, 1125 (N.D. Ill. 2018). The *W.S.R.* court ordered reunification after criminal proceedings were completed, which promptly occurred. *Id.* at 1119. This

lone district court case, which was decided after Mr. A. and Mr. Q. were separated from their children, did not clearly establish a broad, unfettered right to family integrity that was beyond debate at the time of the separations. *See Camreta v. Greene*, 563 U.S. 692, 708 n.7 (2011) (decisions of a federal district court judge are not binding precedent in either a different judicial district, the same judicial district, or even on the same judge in a different case). Moreover, once issued, the *W.S.R.* decision was not ignored. Mr. A. and C.D.A were reunited within the timeframe ordered by the *W.S.R.* court.

Third, and importantly, there is no clearly established broad, unfettered right to family integrity in this context as the plaintiffs suggest. In purported support of this right, they cite a litany of Supreme Court cases. None arise in the context of immigration. None involve the criminal prosecution of a parent.

The enforcement of immigration law, like the enforcement of criminal law, can sometimes result in family separation. *See Holder v. Martinez Gutierrez*, 566 U.S. 583, 594 (2012) (noting that family unity is not the only goal of immigration law and that Congress did not pursue this goal "to the nth degree"). In the immigration context, courts have recognized that parents and children may lawfully be separated when the parent is placed in criminal custody. *Ms. L. v. U.S. Immigr. & Customs Enf't* ("ICE"), 310 F. Supp. 3d 1133, 1143 (S.D. Cal. 2018). Even outside the immigration context, the substantive due process right to family integrity is subject to reasonable restrictions and limitations that arise in the context of a criminal investigation or prosecution of one family member. *See Mulholland v. Gov't*

6

*Cnty. of Berks, Pa.*, 706 F.3d 227 (3d Cir. 2013); *Miller v. City of Philadelphia*, 174 F.3d 368, 370 (3d Cir. 1999).

Here, Mr. A. and Mr. Q. were separated from their children because <u>both fathers were criminally charged</u>. Neither the Supreme Court nor any court of appeals has ever held that criminally charging a parent violates any right to family integrity, even if families are separated as a result. Plaintiffs have identified nothing in the decisions of the Supreme Court or the Third Circuit that removed any official's discretion with respect to any of the categories of asserted actions by "specifically prescribe[ing] a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322. Indeed, as the Fourth Circuit observed, "we . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal." *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019). Thus, there was no unconstitutional infringement on any clearly established right to family integrity here because the separation was necessitated by the criminal prosecutions of Mr. A. and Mr. Q and the subsequent conviction of Mr. A.

This case is distinguishable from those cited by the plaintiffs, including the other district court cases where the discretionary function exception was raised. This case involves two separate sets of fathers and sons where the fathers were referred for criminal prosecution (on different grounds) resulting in one of them being convicted. Because the government possesses the ability to determine when

and how to enforce immigration law, the plaintiffs' claims should be dismissed under the discretionary function exception to the FTCA.

### ii.  The FTCA's exception for actions taken while executing statutes separately bars the plaintiffs' FTCA claims.

As set forth in greater detail in the United States' motion, no FTCA claims may lie where plaintiffs challenge actions taken during the reasonable execution of the law. Here, it is undisputed that the government could criminally prosecute Mr. A. pursuant to 8 U.S.C. § 1325 and Mr. Q. pursuant to 8 U.S.C. § 1326. Once the children were designated UACs and Mr. A. and Mr. Q. were in criminal custody and unable to provide care and custody of their sons, the TVPRA required that their children be transferred to ORR custody. The plaintiffs do not and cannot dispute the applicability of these statutes. Where government employees act pursuant to and in furtherance of a statute or regulation, any resulting harm is not compensable under the FTCA. *See Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see e.g., Welch v. United States*, 409 F.3d 646, 650-53 (4th Cir. 2005) (finding that this exception barred FTCA claims arising from detention under 8 U.S.C.S. § 1226(c)).

In an effort to avoid dismissal, the plaintiffs argue that the decisions to prosecute Mr. A. and Mr. Q. were discretionary[2] and that the government acted with disregard to the plaintiffs' rights. Neither argument is availing.

---

[2] In their efforts to avoid application of the exception for actions taken while executing statutes, the plaintiffs seemingly concede, at least in part, the first prong of the discretionary function exception analysis.

First, the exception to the FTCA set forth in 28 U.S.C. § 2680(a) provides that the United States' waiver of sovereign immunity does not extend to "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Here, once the government determined to prosecute Mr. A. and Mr. Q. and determined that their children were unaccompanied within the meaning of the TVPRA, the government had a non-discretionary duty to transfer the children to the care and custody of ORR. That transfer cannot be the basis for a tort suit.

Indeed, the plaintiffs do not contend that the government failed to comply with the terms of the 8 U.S.C. § 1325, 8 U.S.C. § 1326, or 8 U.S.C. § 1232(b)(3). Rather, they challenge the enforcement of immigration policy—in any manner—as cruel. But to the extent that plaintiffs argue that the statutes the United States enforced are invalid as applied to them, the plain text of the FTCA forecloses such an argument. The FTCA's exception expressly applies "whether or not" the statute the federal officers are executing is "valid." 28 U.S.C. 2680(a). By its terms, this provision expressly retains the United States' sovereign immunity as to claims for money damages that are based upon acts or omissions of federal officers who are performing their obligations in accordance with federal statutes or regulations, even if those statutes or regulations are subsequently found to be invalid as applied. The FTCA is not the venue to test the wisdom behind policy directives. *See Dalehite v. United States*, 346 U.S. 15, 32-33 (1953). The plaintiffs' claims should be dismissed.

### iii.    The lack of private analogs bars the plaintiffs' FTCA claims.

As set forth in greater detail in the United States' motion, no FTCA claims may lie where the challenged action is not comparable to conduct for which a private actor could be held liable. The FTCA applies "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

In an effort to defeat this argument, the plaintiffs point out that courts have permitted FTCA claims in the immigration, prison, and family law contexts. That is irrelevant. The question here is not whether <u>some torts</u> can be stated in the immigration context, the question here is whether a private person would be liable under applicable state law for the enforcement of federal criminal law. They would not be, so there is no private analog.

The five FTCA claims pled in this case are intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, abuse of process, and loss of consortium. In specific:

- the intentional infliction of emotional distress claim is predicated in the separation of Mr. A. and Mr. Q. from their sons, and the alleged conditioning of reunification on waiver of asylum claims. (Am. Compl. ¶¶ 156-160.)

- the negligent infliction of emotional distress, negligence, and loss of consortium claims are not predicated on any specific act or omission. (Am. Compl. ¶¶ 161-169). Presumably the plaintiffs claim everything that happened from the time they were apprehended in the United States until their release from detention is the predicate for these claims; and

- the abuse of process claim is predicated upon the initiation of criminal actions against Mr. A. and Mr. Q. and the alleged conditioning of reunification on waiver of asylum claims. (Am. Compl. ¶¶ 170-174.)

The challenged conduct in these five claims does not have a private analog.

There is no private analog for the criminal prosecution of Mr. A. and Mr. Q. because private individuals do not handle criminal prosecutions. Similarly, there is no private analog for the separation that occurred pursuant to those criminal prosecutions. Moreover, the separations and prosecutions were legally authorized under 8 U.S.C. § 1325, 8 U.S.C. § 1326, and 8 U.S.C. § 1232(b)(3). As such, these actions were immunized and cannot form the basis of an intentional tort claim.

Only a governmental actor could withhold reunification or could accept a waiver of asylum rights.

None of the cases cited by the plaintiffs is remotely analogous:

- *United States v. Muniz*, 374 U.S. 150 (1963) involved two claims—one for medical malpractice and one for negligent supervision after guards failed to timely intervene in a prison fight;

- *Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012) involved a false imprisonment claim brought by a citizen who was mistakenly identified as a non-citizen and detained on this erroneous basis;

- *Avalos-Palma v. United States*, Civil Action No. 13-5481(FLW), 2014 U.S. Dist. LEXIS 96499 (D.N.J. July 16, 2014) involved negligence claims brought by an individual who was illegally removed notwithstanding that a court had stayed his removal.

- *Xue Lu v. Powell,* 621 F.3d 944 (9th Cir. 2010) involved intentional infliction of emotional distress claims after an asylum officer engaged in criminal conduct including sexual assault; and

- *Bartanus v. Lis*, 332 Pa. Super. 48, 480 A.2d 1178 (1984) involved an intentional infliction of emotional distress claim by a father who

alleged that his other family members conspired to turn his son against him; and

- *Commonwealth v. Bryant*, 57 A.3d 191 (Pa. Super. 2012); *Commonwealth v. Trippett*, 932 A.2d 188 (Pa. Super. 2007); and *Commonwealth v. Vining*, 744 A.2d 310 (Pa. Super 1999) are state criminal cases rather than tort cases. In each case the defendant was convicted after assaulting a child.

These cases stand only for the proposition that some FTCA claims may lie in the immigration, prison, and family law contexts. They do not support the conclusion that the plaintiffs' claims may lie in the context pled in the amended complaint. The plaintiffs fail to identify any cases where, on similar facts, a private actor was found liable for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, abuse of process, or loss of consortium. There is no private analog so the plaintiffs' FTCA claims should be dismissed.

### iv. The plaintiffs allege systemic claims that are barred under the FTCA.

As set forth in greater detail in the United States' motion, the plaintiffs allege systemic claims which are barred under the FTCA. The FTCA permits the United States to be sued for damages arising from torts committed by federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b). It does not permit systemic claims. Instead, a plaintiff must identify specific tortious acts by governmental employees. *See Rayonier v. United States*, 352 U.S. 315, 317-18 (1957).

The amended complaint makes clear that the plaintiffs challenge immigration policy writ large. They do not allege that individual actors acted

tortiously—they allege that the entire immigration policy of the prior administration was tortious. That is a systemic challenge regardless of any artful pleading to suggest otherwise.

In an effort to survive dismissal, the plaintiffs' 69-page amended complaint contains seven individual instances where they obliquely reference individual actors. Most of these references are extremely general; only one allegation even identifies an actor by name. *See* Amend. Compl. ¶ 88. Importantly, none of these references criticize specific acts or omissions that individuals decided to undertake. Rather, the plaintiffs criticize the prior administration's policy as that policy was carried out by individuals. The United States itself cannot act except through its employees and agents. Interpreting a case like this—which plainly criticizes a policy—as one alleging negligence by individual actors, would serve as an end run around the fact that the FTCA was not intended as a vehicle to challenge federal governmental policy. Because the plaintiffs' claims are a systemic challenge, they should be dismissed.

> ### v.   The plaintiffs' claims relating to detention at the BCRC are barred by the independent contractor exception.

As set forth in greater detail in the United States' motion, the plaintiffs' claims relating to detention at the BCRC are barred by the independent contractor exception to the FTCA.[3]

---

[3] Only one set of plaintiffs spent time in BCRC – Mr. A. and CDA. Mr. Q. and E.A.Q.A. were separated and reunited outside of this jurisdiction.

The plaintiffs attempt to avoid dismissal by arguing that ICE directed the staff at the BCRC, arguing that they pled so in the amended complaint. These are precisely the sorts of "bald assertions" that need not be credited. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (holding that a court does not need to credit "bald assertions" in a complaint when deciding a motion to dismiss). Moreover, this pleading is belied by the attachments to the motion to dismiss, which demonstrate clearly that contractors, not federal government employees, were responsible for the day-to-day operations at the BCRC. This is not the first time this issue has been litigated, and the Third Circuit has affirmed a finding that Berks County controlled day-to-day operations at BCRC, not the federal government. *See E.D. v. United States*, 764 F. App'x 169, 171-72 (3d Cir. 2019). The independent contractor exception to the FTCA applies, and all claims relating to detention at Berks must be dismissed.[4]

### vi.    The plaintiffs' claims are barred under applicable state law.

As set forth in greater detail in the United States' motion, the plaintiffs' claims are barred by applicable state law. The parties agree that Texas law applies to all claims by Mr. Q. and E.A.Q.A.

The parties disagree as to what law applies to Mr. A. and C.D.A.'s claims. The events forming the basis of each of their claims occurred in the following states:

---

[4] As argued herein, such dismissal would sever the only tangential factual connection between the allegations in the amended complaint and their choice to litigate in this district.

| Claim | Underlying Facts | Locus |
|---|---|---|
| Intentional infliction of emotional distress | The separation of Mr. A. and C.D.A. | New Mexico |
| | The reunification process | Illinois |
| Negligent infliction of emotional distress<br><br>Negligence<br><br>Loss of consortium | The apprehension of Mr. A. and C.D.A. | New Mexico |
| | The initial detention of Mr. A. and C.D.A. together | New Mexico |
| | The initiation of criminal proceedings against Mr. A. | New Mexico |
| | The separation of Mr. A. and C.D.A. | New Mexico |
| | The detention of C.D.A. | Texas and Illinois |
| | The reunification process | Illinois |
| | The detention together after reunification | Pennsylvania |
| Abuse of process | The initiation of criminal proceedings against Mr. A. | New Mexico |
| | The reunification process | Illinois |

For each claim, a majority of the underlying events occurred in New Mexico. Of all the involved locations, Pennsylvania plays the smallest part.

Yet, in their opposition, the plaintiffs apply Pennsylvania choice of law rules and argue that because detention at the BCRC is the "last significant negligent act," which occurred in Pennsylvania, Pennsylvania law applies. This argument is at odds with the argument they make two pages earlier, where they note that none of their claims are predicated solely on conditions at the BCRC and all claims are

based, at least in part, on the separation that occurred in New Mexico. See Memo Opp. at 71 ("Pennsylvania law applies to Mr. A. and C.D.A.'s claims save for torts that Mr. A. and C.D.A. were subjected to in New Mexico.").

New Mexico law applies to Mr. A. and C.D.A.'s claims. But even if Pennsylvania law applies to Mr. A. and C.D.A's claims, the outcome would be the same. All of the plaintiffs' claims would be barred under applicable state law.

As to Mr. Q. and E.A.Q.A.'s claims, Texas recognizes a civil law enforcement privilege. This privilege bars a tort claim entirely, because where conduct is privileged, then it is not tortious conduct. *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988). The United States may invoke this privilege in the FTCA context. *See Mendez v. Poitevent*, 823 F.3d 326, 335 (5th Cir. 2016).

The only dispute between the parties is whether Texas's civil law enforcement privilege applies here. It does because the actions taken here were lawful. The separations and prosecutions were legally authorized under 8 U.S.C. § 1325, 8 U.S.C. § 1326, and 8 U.S.C. § 1232(b)(3). As such, all actions taken here were lawful at the time they occurred. Texas's civil law enforcement privilege applies. *See Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009) (finding DEA agent's reasonable use of force in effecting an arrest was privileged under Tex. Penal Code Ann. § 9.51).

The plaintiffs' primary argument to avoid dismissal under this privilege is that there is no case precisely on point. This does appear to be an issue of first impression, which is a reason to sever the claims and transfer of Mr. Q. and

E.A.Q.A.'s claims to the United States District Court for the Western District of Texas, as discussed below. But if this Court decides the issue, the mere fact that a case is one of first impression is not a reason to find a privilege inapplicable. Texas's civil law enforcement privilege is broad and is designed to shield lawful law enforcement actions. Texas's civil law enforcement privilege is one of several reasons to dismiss all Mr. Q.'s and E.A.Q.A.'s claims asserted under Texas law.

The intentional infliction of emotional distress claims are subject to dismissal no matter which law applies. Texas, New Mexico, and Pennsylvania all require extreme and outrageous conduct to sustain an intentional infliction of emotional distress claim. Mr. A. and Mr. Q. were separated from their sons because Mr. A. and Mr. Q. were criminally charged and transferred to criminal detention. That charges against Mr. Q. were ultimately discontinued is irrelevant—the separation was predicated on the same lawful action that results in family separation outside the immigration context. When a parent is criminally charged and detained, it is no longer possible for that parent to maintain physical custody of his child. Separation under these conditions is not "outrageous conduct" sufficient to support a claim for intentional infliction of emotional distress.

In addition, Pennsylvania requires a physical injury for claims of intentional infliction of emotional distress. *See Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. Ct. 1994), *aff'd*, 676 A.2d 222 (Pa. 1996). The physical injury must be supported by medical evidence. *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987). The generalized assertions in the amended complaint about emotional

17

distress neither plead physical injury nor do they provide specific medical evidence about the plaintiffs in this case. News articles generally commenting on the effects of the Zero Tolerance Policy are insufficient under Pennsylvania law. In ruling on similar allegations, courts have found no physical injury stemming from the conditions the plaintiffs describe. See *Villafuerte v. United States*, No. 7:16-CV-619, 2017 U.S. Dist. LEXIS 227976, at *9 (S.D. Tex. Oct. 11, 2017).

As to claims for negligent infliction of emotional distress, again it does not matter which state law applies—the claims are barred. Texas does not generally recognize this tort. *See Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993). Texas does allow recovery for mental anguish under other torts. Contrary to plaintiffs' representations in their opposition, Texas does not recognize negligent infliction of emotional distress as a separate tort except in narrow circumstances absent here. *See Villafuerte*, 2017 U.S. Dist. LEXIS 227976, at *30-37.

New Mexico law only recognizes the tort in the context of bystander liability. *Akutagawa v. Laflin, Pick & Heer, PA.*, 126 P.3d 1138 (N.M.App., 2005). To state a viable claim, a plaintiff must witness a sudden, traumatic event that causes serious physical injury or death to a family member. *See Folz v. State*, 797 P.2d 246 (N.M. 1990). By the plaintiffs' own admission, C.D.A. and E.A.Q.A. suffered effects from the separation <u>after</u> the separation occurred, when Mr. A. and Mr. Q. were no longer bystanders. In addition, plaintiffs did not sufficiently plead physical injury.

Pennsylvania law also limits the tort of negligent infliction of emotional distress. In Pennsylvania, a claim of negligent infliction of emotional distress is

18

limited to situations where: (1) the defendant owed the plaintiff a fiduciary or contractual duty; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff reasonably experienced a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative. *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 217 (Pa. Super. Ct. 2012)). None of those situations is pled here.

The negligence claims are subject to dismissal no matter which law applies. Texas, New Mexico, and Pennsylvania all require breach of a duty for a negligence claim to survive. It is not clear what duty plaintiffs believe they were owed that was breached. The plaintiffs essentially argue that because Mr. A. and Mr. Q. illegally entered with their sons, they should not have been detained or criminally prosecuted – but they can point to nothing supporting their apparent contention that illegal entry as a family unit exempts them from the lawful application of immigration and criminal law. The United States has no duty to refrain from applying the law to Mr. A. and Mr. Q. merely because they were with their sons.

The abuse of process claims are subject to dismissal no matter which law applies. Texas, New Mexico, and Pennsylvania all require actual harm. Here, there is no harm pled. The only underlying acts pled as part of plaintiffs' abuse of process claims are the initiation of criminal proceedings and the alleged coercion to relinquish asylum claims. Neither caused Mr. A. or Mr. Q. any harm. Mr. A. was convicted and served his sentence. He cannot have been harmed by a lawful criminal conviction. The charges against Mr. Q. were ultimately discontinued. He has pled no harm to reputation or other damages from being charged. As to the

alleged coercion, none of the plaintiffs have pled that they, in fact, did relinquish their asylum claims, so there was no harm. The plaintiffs cannot point to other events, such as the separation, as the grounds for their abuse of process claims. As pled in the amended complaint, the abuse of process claims relate only to the criminal charges and alleged coercion.

The loss of consortium claims are subject to dismissal no matter which law applies. Under Texas law, loss of consortium requires a physical injury to one family member that causes another family member to lose the benefit of the familial relationship. Under Texas law, loss of consortium is a derivative action. *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 738-39 (Tex. 1980). The primarily injured family member must first prevail before the secondarily injured family member can prevail. Here there are no allegations of physical injury, and for the many reasons argued herein—and in the motion to dismiss—the primary tort claims must fail. So too must the derivative loss of consortium claims fail under Texas law.

Under New Mexico law, loss of consortium claims must be predicated on intentional or malicious injury. *Roseberry v. Starkovich*, 387 P.2d 321, 324 (N.M. 1963). New Mexico does not recognize a loss of consortium claim based on mere negligence. *Tondre v. Thurmond-Hollis-Thurmond, Inc.*, 706 P.2d 156, 157 (N.M. 1985). Moreover, there must be serious bodily injury to the primary tort victim. As previously argued, the one intentional claim alleged here fails under New Mexico law. Moreover, there is insufficient bodily injury.

As the plaintiffs themselves concede, Pennsylvania law does not recognize such a tort between fathers and sons. *See* Memo in Opp. at 57 n.22. Pennsylvania law is also fatal to the plaintiffs' loss of consortium claims.

As explained above and in the motion to dismiss, all of the plaintiff's FTCA claims should be dismissed for numerous independent reasons.

### b.  The plaintiffs' ATS claims are not viable.

As a threshold matter, the United States has not waived its sovereign immunity under the ATS. *See Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 206-07 (D.C. Cir. 1985) (citing *Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1092, (D.C. Cir. 1980)) (holding that even if customary international law may be applied to foreign sovereigns under the ATCA as interpreted in *Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980), it cannot be applied to the United States, as there is no waiver of immunity). The ATS does not operate as a separate waiver of sovereign immunity. *Perez v. United States*, 8 F.4th 1095, 1100 (9th Cir. 2021); *Arar v. Ashcroft*, 532 F.3d 157, 175 n.12 (2d Cir. 2008); *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992); *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207, 248 U.S. App. D.C. 146 (D.C. Cir. 1985); *Rosner v. United States*, 231 F. Supp.2d 1202, 1210 (S.D. Fla. 2002); *Hawa Abdi Jama v. United States INS*, 22 F. Supp. 2d 353, 365 (D.N.J. 1998). The absence of any waiver of sovereign immunity requires dismissal of the plaintiffs' ATS claims.

Even if it did not, the amended complaint does not state a claim for which an ATS action will lie. The ATS authorizes suit when a tort is committed in violation of

the law of nations or a treaty of the United States. 28 U.S.C. § 1350. For an action
to lie, there must be a violation of a norm that violates either a treaty or customary
law.  *See Kadic v. Karadzic*, 70 F.3d 232, 238 (2d Cir. 1995). The violated norm
must be specific, universal, and obligatory. *In re Estate of Ferdinand E. Marcos,
Human Rights Litigation*, 25 F.3d 1467, 1475 (9th Cir. 1994). Courts are cautioned
to apply the ATS with "great caution" and only where there is a "definite" norm
accepted "among civilized nations." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 730-
31(2004).

Here, the plaintiffs have not identified a norm that would authorize an ATS
suit. The Court must focus on the well-pleaded allegations of the amended
complaint. According to these allegations, each plaintiff father and son crossed the
border without authorization and were apprehended. They were detained together
for a short period of time before the fathers were criminally charged. They complain
about the conditions during detention, but the amended complaint contains no
allegations of any physical or sexual abuse. Once the criminal cases concluded, the
fathers were reunited with their sons. One family was released in the United States
immediately. The other family was detained together for approximately one more
month before being released in the United States.

This does not constitute torture. It does not constitute a crime against
humanity. Conduct sufficient to state an ATS claim has been found where
individuals were kidnapped, beaten, mutilated, shocked, shot, raped, and killed.
*See, e.g., In re Estate of Ferdinand E. Marcos Human Rights Litigation*, 978 F.2d

493 (9th Cir. 1992); *Kiobel v. Royal Dutch Petroleum Co.*, 456 F. Supp. 2d 457 (S.D. N.Y. 2006), *aff'd in part on other grounds, rev'd in part on other grounds*, 621 F.3d 111 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 248 (2011); *Doe v. Nestle, S.A.*, 748 F. Supp. 2d 1057 (C.D. Cal. 2010); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322 (N.D. Ga. 2002); *Xuncax v. Gramajo*, (D. Mass. 1995). The plaintiffs point to no norm that is specific, universal, and obligatory that prohibits the underlying facts in this case. It is not sufficient for the plaintiffs to label this conduct "torture" or a "crime against humanity," they must show that the specific acts and omissions here violate customary international law. They cannot.

Nor, as the plaintiffs suggest, would dismissal be premature at this stage of litigation. In large part, the parties agree on the basic underlying facts. The United States does not dispute that Mr. A. and Mr. Q. were, for a period of time, separated from their sons. Because the ATS requires that plaintiffs plead a violation of the law of nations at the jurisdictional threshold, this ATS requires a more exhaustive review of the merits to establish jurisdiction than is generally required. *Kadic*, 74 F.3d at 238. It is not a sufficient basis for jurisdiction for a plaintiff to plead merely a colorable violation of the law of nations. *Licci by Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201 (2d Cir. 2016). The plaintiffs' ATS claims must be dismissed.

### 2. The claims in this civil action are not properly joined so any surviving claims should be severed.

The claims in this civil action are improperly joined. If any claims survive dismissal, the claims should be severed. Surviving claims by plaintiffs C.D.A. and

Mr. A. should proceed in a separate civil action from any surviving claims by plaintiffs E.A.Q.A. and Mr. Q.

The undisputed facts relating to these two sets of plaintiffs are as follows:

|  | Plaintiffs C.D.A. and Mr. A. | Plaintiffs E.A.Q.A and Mr. Q. |
|---|---|---|
| County of origin | Brazil | Honduras |
| Date of entry | May 23, 2018 | June 7, 2018 |
| Locus of apprehension and initial detention | New Mexico | Texas |
| Criminal charge (father only) | 8 U.S.C. § 1325 Improper entry | 8 U.S.C. § 1326 Improper reentry |
| Locus of separation | New Mexico | Texas |
| Detention locations (son only) | Clinton, Texas Chicago, Illinois | Brownsville, Texas |
| Detention location (father and son together) | Berks, Pennsylvania | None |
| Time detained in the district | 29 days | None |
| Locus of reunification and release | Illinois (reunification) Pennsylvania (release) | Texas |

There is no dispute; the two sets of plaintiffs were never in the same places at the same times.[5] Nor is there any reason to believe they ever interacted with the same government officials.

---

[5] Their opposition describes in great detail conditions in various detention facilities, yet their complaint omits any allegations that each of the four plaintiffs personally experienced these conditions. In deciding the pending motion, the Court should not credit factual assertions made in the opposition papers. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (distinguishing between legal argument in a brief and a properly supported factual allegation in a complaint). The Court need only consider the well pled allegations in the amended complaint. *Anspach v. City of Philadelphia*, 503 F.3d 256, 260 (3d Cir. 2007).

Even more striking, one set of plaintiffs—E.A.Q.A. and Mr. Q. have no factual connection to the district. They were never detained in the district. Crediting the allegations in the complaint, these two plaintiffs arrived in the district <u>after</u> and <u>independent from</u> the allegations giving rise to their claims.

The plaintiffs provide no explanation for why they have joined their claims in this civil action. As referenced in the voluminous documents attached to the plaintiffs' amended complaint and opposition papers, many individuals who crossed the border during the former administration were apprehended for unlawful entry and detained separately from family members. The plaintiffs here have no connection to each other save for being amongst that large group <u>of border crossers</u>. There is no common factual nucleus to their claims.

Because the underlying facts differ so greatly, so do the legal issues for each set of plaintiffs. Because the plaintiffs were apprehended and detained in different places and in different times, different law applies to their claims. The plaintiffs concede that different law applies to the two sets of plaintiffs, arguing that Pennsylvania law applies to C.D.A. and Mr. A. while Texas law applies to E.A.Q.A. and Mr. Q. Although the United States in part disagrees with plaintiffs' choice of law analysis, the mere fact that both parties agree different law applies to the different sets of plaintiffs (because they allege torts arising from events occurring in different states at different times by different actors) demonstrates the dearth of factual and legal commonality.

These claims lack the commonality necessary to be joined. A contrary finding would mean not only that any or all of the separated individuals who crossed the border during the prior administration could file joint claims, but that in all other tort contexts—any and all putative plaintiffs could join together.[6] Such joinder would be contrary to the goals of permissive joinder. *See Allen v. Wyeth*, Nos. 1203, 03-20310, 2004 U.S. Dist. LEXIS 9432, at *3 (E.D. Pa. May 20, 2004) (noting that multi-plaintiff actions with unrelated claims impede rather than promote efficient judicial administration).

The only apparent connection between the two sets of plaintiffs is that they both challenge the application of immigration law to them and they share legal counsel. Neither is sufficient to justify joinder. Claims are properly joined only where they share common factual and legal questions. Fed. R. Civ. P. 20(a)(2); *see also Pruden v. SCI Camp Hill*, 252 F. App'x 436, 438 (3d Cir. 2007). The test for permissive joinder is not whether a defendant has exhibited the same behavior towards different plaintiffs, the test is whether the claims share a common nucleus of fact and law. *See O'Keefe v. Ace Rest. Supply, LLC*, No. 11-1330, 2016 U.S. Dist. LEXIS 3422, at *6-7 (E.D. Pa. Jan. 12, 2016). Permissive joinder does not permit the joining of unrelated claims in one a single civil suit. *Id.* at *5. That is precisely

---

[6] For example, any patient asserting a medical malpractice claim against the United States Department of Veteran's Affairs ("VA") could join any other patient asserting a malpractice claim even if the medical care occurred in different VA hospitals by different VA staff. Similarly, any pedestrian asserting a trip and fall claim against the United States Postal Service (the "USPS") for an accident on the sidewalk could join any other pedestrian asserting a trip and fall claim even if the falls occurred at different USPS stations.

what the plaintiffs have done. To the extent any claims survive dismissal, the claims should be severed.

### 3. The claims in this civil action are not brought in an appropriately convenient district so any surviving claims should be transferred.

The claims in this civil action should be transferred if they survive dismissal. Surviving claims by plaintiffs C.D.A. and Mr. A. should be transferred to the United States District Court for the District of New Mexico. Surviving claims by plaintiffs E.A.Q.A. and Mr. Q. should be transferred to the United States District Court for the Western District of Texas.

The claims asserted here have only the most <u>tenuous</u> connection to the district. The plaintiffs proffer (with no explanation) that they reside in the district. In their voluminous opposition, the plaintiffs fail to provide any support for this assertion.[7] Rather, they ask the Court to simply credit their assertions. It need not. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (holding that a court does not need to credit "bald assertions" in a complaint when deciding a motion to dismiss).

But even if the Court does credit their assertions to residency and give considerable weight to the plaintiffs' preference for this forum, that preference would not overcome the overwhelming facts supporting transfer. Every other factor

---

[7] The plaintiffs also claim, again with no support, to be indigent. Notwithstanding their proffered indigency, the plaintiffs appear to be more than adequately represented by nearly a dozen attorneys in multiple states who presumably would be able to litigate the cases post-severance and transfer.

supports transfer. The defendant, the United States, prefers transfer. The claims arose in other districts. The relevant witnesses and documents are in other districts. Transfer is in the public interest.

When the Court sets aside plaintiffs' efforts to shift its focus, it becomes clear that plaintiffs' challenge targets the prior administration's Zero Tolerance Policy and their resulting separations.[8] Their separations are the core events challenged in this case. Plaintiffs' initial detention and separation occurred in New Mexico and Texas. Only later did two of the four plaintiffs find themselves in the BCRC. Yet plaintiffs now ask this Court to find that detention at the BCRC is the very core of the plaintiffs' claims. It is not.

If, as the plaintiffs now claim, events occurring at the BCRC are central to this action, it illustrates starkly why E.A.Q.A. and Mr. Q.'s claims should be severed and transferred. E.A.Q.A. and Mr. Q. were never in the BCRC. They can bring no claims relating to detention there. The plaintiffs cannot have it both ways—arguing on one hand that events at the BCRC are central to the claims in this civil action while simultaneously arguing that two plaintiffs who were never detained at the BCRC should be litigants in this case. By the plaintiffs' logic, all of the thousands of individuals who crossed the border during the prior administration would have venue in this district because C.D.A. and Mr. A. were detained in the BCRC.

---

[8] As previously argued, this is why the plaintiffs' tort claims must fail—tort law is not the vehicle for a challenge to this policy.

In reality, events occurring in this district are not the core of the case. The separations are the main conduct challenged in this case.  C.D.A. and Mr. A. crossed and were initially detained in New Mexico, where their separation occurred. E.A.Q.A. and Mr. Q. crossed and were initially detained in Texas, where their separation occurred. Those two locations— New Mexico and Texas—are where any surviving claims belong. At most, the BCRC is a minor part of this case for two of the four plaintiffs.[9]

The evidence at the core of this case is outside the district, so convenience and the public interest weigh in favor of litigating elsewhere. It was in New Mexico and Texas that the decisions to apprehend the plaintiffs were made. Documents relating to the apprehension are located there. It was in New Mexico and Texas that the decisions were made to charge Mr. A. and Mr. Q. Not only are the documents relating to these charges located there but so are the decisionmakers who initiated charges. Depositions of these decisionmakers would occur in New Mexico and Texas rather than Pennsylvania.

The plaintiffs bring claims related to the conditions of detention in New Mexico and Texas. Those facilities are located there, not in this district. Documents from these facilities and witnesses who worked in these facilities, some of whom are contractors rather than federal employees, are located there. Again, depositions

---

[9] And if this Court finds that the independent contractor exception applies, which it should, claims relating to the BCRC would be dismissed entirely, leaving no connection to events occurring in this District.

would likely occur there. To the extent these witnesses are contractors rather than federal employees, the United States lacks control over these witnesses and would be reliant on the courts in New Mexico and Texas to compel the appearance of these witnesses.

As to the BCRC, it no longer houses noncitizen families for any length of time. At all relevant times, it was run by contractors, not by employees of the United States. Those contractors are outside the control of the United States and it is unclear whether they are still present in the district. It is not a foregone conclusion that discovery relating to conditions at the BCRC would occur in this district—but even if it did, that would be a small portion of the overall discovery.

Many public interests weigh in favor of transfer. The plaintiffs concede that Texas law governs claims by E.A.Q.A and Mr. Q. Texas courts are most familiar with Texas law. Moreover, the forum state has a vested interest in deciding local controversies. From the moment they were apprehended until they were released, E.A.Q.A and Mr. Q. never left Texas. There is a strong public interest in allowing a Texas court to adjudicate their claims.

As to C.D.A. and Mr. A., the United States argues that New Mexico law applies to all of their claims. If the Court agrees, the public interest favors transfer of their claims New Mexico for the same reasons the public interest favors transfer of E.A.Q.A and Mr. Q.'s claims to Texas.

But even if the Court disagrees that New Mexico law applies to C.D.A. and Mr. A.'s claims, most of the alleged tortious conduct happened in New Mexico, not

Pennsylvania. The amended complaint contains allegations criticizing: the initial detention (Am. Compl. ¶¶ 87, 95); the subsequent separation (Am. Compl. ¶¶ 89, 91-92, 97, 108); the process of reunification during which Mr. A. claims he was pressured to relinquish asylum claims (Am. Compl. ¶ 107); and the detention in the BCRC (Am. Compl. ¶¶ 133-127). The initial detention and subsequent separation occurred in New Mexico. Mr. A. and C.D.A. were reunified in Illinois and immediately transferred to Pennsylvania. Even if the Court disagrees about the choice of law for all surviving claims, New Mexico still has a vested interest in resolving claims arising from events occurring in that state.

The plaintiffs want to litigate in this district. But their preference cannot be the only consideration. *See Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 62 (2013) (articulating non-exhaustive list of factors to be considered under 28 U.S.C. § 1404(a) including, but not limited to the plaintiff's preference). The totality of applicable factors support transfer of any surviving claims to either the United States District Court for the Western District of Texas or the United States District Court for the District of New Mexico.

For the aforementioned reasons, this Court should enter an order dismissing all claims in the plaintiffs' amended complaint, with prejudice. In the alternative, if any claims survive dismissal, those claims should be severed and transferred.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


 /s/ Gregory David [SRB]_____
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division


 /s/ Veronica J. Finkelstein_____
VERONICA J. FINKELSTEIN
ANTHONY ST. JOSEPH
Assistant United States Attorneys

*Counsel for the United States of America*


Dated:   May 26, 2022

**CERTIFICATE OF SERVICE**

I certify that on this date, I filed the foregoing reply brief with the Court and

served it via ECF case filing and email, on the following:

Karen L. Hoffman
SyrenaLaw
128 Chestnut Street, Suite 301A
Philadelphia, PA 19106
karen@syrenalaw.com

Bridget Cambria
Amy Maldonado
Aldea-The People's Justice Center
532 Walnut Street
Reading, PA 19601
bridget@aldeapjc.org
amy@amaldonadolaw.com

Adam Kirschbaum
Anne C. Reddy
Blake M. Bailus
Daniel Friedman
Nicholas A. Norden
Richard A. Edlin
Sarah Elizabeth Catterson
Greenberg Traurig, P.A.
One Vanderbilt Avenue
New York, NY 10017
kirschbauma@gtlaw.com
reddya@gtlaw.com
bailusb@gtlaw.com
friedmand@gtlaw.com
nordenn@gtlaw.com
edlinr@gtlaw.com
cattersons@gtlaw.com

Joel Max Eads
Greenberg Traurig, LLC
1717 Arch Street, Suite 400
Philadelphia PA 19103
eadsj@gtlaw.com

Dated: May 26, 2022

 /s/ Anthony St. Joseph
Anthony St. Joseph
Assistant United States Attorney