UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| C.D.A., minor child, and Mr. A., his father; and E.A.Q.A., minor child, and Mr. Q., his father, | Case No. 5:21-cv-00469 |
| *Plaintiffs*, | |
| v. | |
| United States of America, | |
| *Defendant*. | |

**PETITION TO COMPROMISE AND SETTLE THE CLAIMS OF MINORS C.D.A. AND E.A.Q.A. PURSUANT TO E.D. Pa. LOCAL RULE 41.2**

Minor plaintiffs C.D.A. and E.A.Q.A. (together, "Petitioners"), submit this Petition for approval of a settlement in principle (the "Proposed Settlement") agreed to between Petitioners and Defendant United States of America (the "Government"). The Government does not oppose this petition.

### BACKGROUND

1. <u>Plaintiffs C.D.A. and Mr. A</u>

Mr. A and his son, C.D.A., came to the United States from Brazil to escape abusive family members and threatening loan sharks when C.D.A. was nine years old. Pursuant to the United States Government's Family Separation and Zero Tolerance Policies, C.D.A. was forcibly separated from his father within days of arriving at a Customs and Border Protection ("CBP") processing center. Mr. A and

C.D.A. were subsequently separated for seven weeks. While they were originally told that they would be separated for a "process" that would last 3-5 days, C.D.A. was sent by overnight bus to the Heartland facility in Chicago. There, after a number of weeks and documented breakdowns, C.D.A. was examined by a clinical psychologist who determined that C.D.A. was suffering from severe anxiety and depression due to the separation. His deteriorating mental health manifested itself in thoughts of self-harm. Meanwhile, Mr. A was detained in ICE custody in New Mexico and pled guilty to charges of unlawful entry (receiving time served) in exchange for unfulfilled promises that he would be reunited with his son.

C.D.A. and another separated child sued the Government in the United States District Court for the Northern District of Illinois and received an injunction preventing the removal of their parents from the United States and requiring their immediate reunification. *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116 (N.D. Ill. 2018). Even then, and in violation of the temporary restraining order, Immigration and Customs Enforcement ("ICE") leveraged reunification to coerce Mr. A into waiving his right to seek asylum, requesting that he sign a consent to deportation form to see his son.

Mr. A and C.D.A. were finally reunited by court order. However, they were then transferred to the Berks County Residential Center ("Berks") in Leesport, Pa., a secure facility, in violation of ICE's own Family Detention Report, which

recommended against the continued detention of families. There, Mr. A and C.D.A. were subjected to continued cruel and dehumanizing procedures for nearly a month from July 12 through August 9, 2018, when they were finally released.

2. Plaintiffs E.A.Q.A. and Mr. Q.

Mr. Q and his son E.A.Q.A. came to the United States from Honduras to escape gang violence when E.A.Q.A. was ten years old. Pursuant to the Government's Family Separation and Zero Tolerance Policies, E.A.Q.A. was forcibly separated from his father after three days together in detention at a CBP processing center. Mr. Q was given a phone number with which to contact his son, but the number did not work.

E.A.Q.A. was transferred to the La Esperanza Home for Boys in Brownsville, Texas, where he was the youngest child in the facility. Mr. Q and E.A.Q.A. had no contact for more than a month. Finally, in response to the TRO issued in C.D.A.'s case, Mr. Q and E.A.Q.A. were finally reunited on July 15 and released from custody on July 18, 2018.

3. Procedural History

Petitioners and their fathers (collectively "Plaintiffs") filed their seven-count complaint on February 1, 2021, alleging intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and loss of consortium under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671, *et seq.* ("FTCA"), and

torture, crimes against humanity: persecution, and crimes against humanity: inhumane acts under the Alien Tort Statute, 28 U.S.C. §1350.

After the Government filed its motion to dismiss on April 26, 2021, the case was stayed pending settlement talks led by the ACLU regarding a global resolution of all similarly situated family separation cases. *See* ECF Nos. 17, 25, ¶ 3 ("The United States, along with a group of counsel who are coordinating negotiations on behalf of plaintiffs and claimants, are engaged in a nationwide effort to settle district court cases and pending administrative tort claims arising from family separations at the U.S./Mexico border that occurred during the prior administration. While significant progress has been made, due to the scale and complexity of the effort, additional time is needed to achieve a global resolution of these matters.").

After those negotiations ended, Plaintiffs filed an amended complaint on January 28, 2022, adding an eighth cause of action for abuse of process under the FTCA. On the Government's motion to dismiss the amended complaint, the Court sustained Plaintiffs' claims for intentional infliction of emotional distress and Plaintiffs C.D.A. and Mr. A's claim for abuse of process.

In a Court-ordered mediation session before Magistrate Judge Straw on December 14, 2023, Plaintiffs and the Government agreed in principle to the proposed Settlement with a total value of $540,000, with $135,000 awarded to each of the four plaintiffs.

# ARGUMENT

1. <u>Legal Standards</u>

Eastern District of Pennsylvania Local Rule of Civil Procedure 41.2 provides that all claims of a minor which shall be compromised, settled or dismissed must be approved by the court. Local R. 41.2(a). In addition, subsection (c) of the rule provides:

> No counsel fee, costs or expenses shall be paid out of any fund obtained for a minor, incapacitated person or such decedent's estate as a result of a compromise, settlement, dismissal or judgment unless approved by the court. *Id.* at §41.2(c).

In addition, Pennsylvania Rule of Civil Procedure 2039(a) provides that "no action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor." Pa. R. Civ. P. 2039(a). Subsection (b) states that "when a compromise or settlement has been so approved by the court, … the court … shall make an order approving or disapproving any agreement entered into by the guardian for the payment of counsel fees and other expenses out of the fund created by the compromise…." Pa. R. Civ. P. 2039(b).

To ensure the protection of the minors' best interests, "the petition [for approval of a settlement] should include all of the relevant facts and the reasons why the [minors'] guardian believes the settlement is desirable and why it is in the minor[s'] best interests to settle the action." *Lee v. Victoria's Secret, LLC*, 2012 WL

628015 at *2 (E.D. Pa. Feb. 27, 2012) (internal quotations omitted). Further, "relevant facts include 'a description of the minor's physical and/or psychological condition, a statement and/or discussion regarding the minor's current physical and/or mental health needs, evidence of the or future medical and/or psychological care, as well as future expenses.'" *Id*. "Courts should give 'considerable weight' to the judgment of the parties and counsel, as they are 'typically in the best position to evaluate the settlement.'" *Id*. (quoting *Henderson ex rel. Bethea v. Nationwide Mutual Ins. Co.*, 2001 WL 43648, at *2 (E.D. Pa. Jan. 4, 2001)).

   2. <u>Harm Experienced by Petitioners</u>

C.D.A. was **nine years old** at the time of his separation from his father. Mr. A and C.D.A. were separated from each other for almost 7 weeks (47 days) and were unlawfully kept in a secure facility (together) for an additional 28 days. C.D.A. and Mr. A were subjected to freezing conditions in CBP detention, and then subjected to sleep deprivation during their detention at Berks.

C.D.A. and Mr. A continue to experience flashbacks and other effects to their mental health in the years since the separation occurred. Therapy, counseling, and other health services provided to C.D.A. and Mr. A relating to the separation is documented. CDA was first examined by a psychologist at Heartland, who found that the separation caused him to suffer from severe anxiety and depression, leading to suicidal ideation.

6

C.D.A., who has an Individualized Education Plan at school, suffered from extreme and documented bullying. He continues to suffer from depression and other behavioral problems resulting from the anxiety and trauma of his separation from his father.

E.A.Q.A. was **ten years old** at the time he was separated from his father, Mr. Q, for five weeks. E.A.Q.A. and Mr. Q continue to experience flashbacks and other effects to their mental health in the years since the separation occurred. Therapy, counseling, and other health services provided to E.A.Q.A. and Mr. Q relating to the separation is documented.

3. <u>Fairness of the Proposed Settlement</u>

The Proposed Settlement was facilitated by the participation of Magistrate Judge Straw, who, in a five-hour mediation session, moved the parties from their initial positions to a compromise. That the Proposed Settlement was negotiated under Court supervision is itself evidence of its fairness. *See, e.g., Kane v. Cnty. of Chester*, 2016 WL 3997258, at *2 (E.D. Pa. July 25, 2016) (approving settlement where court "was deeply involved in the mediation which resulted in a settlement in the sum of $2,850,000" and, "[a]t the conclusion of the mediation, it was my opinion that the gross amount of the settlement was appropriate.").

Petitioner's claims are among dozens of family-separation claims that have been brought across the country. Recently, the Government has been settling a

7

number of these cases according to a matrix that awards a baseline amount for each plaintiff, and additional amounts for such factors as the length of separation and the age of the minor plaintiffs. Upon information and belief, the Proposed Settlement is in accordance with the Government's matrix and similar family-separation settlements.

While Petitioners still suffer the effects of separation, they do not require any acute, ongoing psychological or other medical care. Thus, there is no need for the Proposed Settlement to account for future medical costs.

Additionally, the settlements are in Petitioners' interests given the costs (in time) and length of continued litigation. Petitioners would likely have to wait a considerable amount of time (including appeals) for any recovery, when they need the money now. Nor is the amount of recovery certain due to Petitioners' burden to prove its claims. *See A.F. v. Leisure Time Prod.*, LLC, 2024 WL 493421, at *2 (E.D. Pa. Feb. 7, 2024) (accounting for time value of money and risks of litigation in approving settlement); *Dennis v. Pfizer Inc.*, 2021 WL 5788458, at *2 (E.D. Pa. Dec. 6, 2021) (same).

   4. Counsel is Not Seeking Fees

Pursuant to Local Rule 41.2(c), "No counsel fee, costs or expenses shall be paid out of any fund obtained for a minor, incapacitated person or such decedent's

estate as a result of a compromise, settlement, dismissal or judgment unless approved by the court."

Here, counsel for Petitioners is serving in a *pro bono* capacity and is not seeking fees. Thus, the entire settlement amount will be used for the benefit of Petitioners as they grow up and move on from their traumatic separation from their fathers.

## CONCLUSION

For the reasons stated above, Petitioners respectfully request that the Court approve the Proposed Settlement.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: ___*s/ Richard Edlin*___
      Richard A. Edlin (*pro hac vice*)

One Vanderbilt Avenue
New York, NY 10017
Phone: (212) 801-9200
Edlinr@gtlaw.com

Anne C. Reddy (*pro hac vice*)
Daniel Friedman (*pro hac vice*)
Blake M. Bailus (*pro hac vice*)
Adam Kirschbaum (*pro hac vice*)
Sarah E. Catterson (*pro hac vice*)
One Vanderbilt Ave.
New York, New York 10017
Phone: 212-801-9200

Karen L. Hoffmann

LAW OFFICES OF STANLEY J.
ELLENBERG, ESQ., PC
1500 John F. Kennedy Blvd. Ste. 1825
Philadelphia, PA 19102
Phone: 215-790-1682

Bridget Cambria
ALDEA – THE PEOPLE'S JUSTICE
CENTER
532 Walnut Street
Reading, PA 19601

*Counsel for Plaintiffs*